IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| MATTHEW CORNELIUS MEDLEY,   )<br>                                                            )<br>              **Plaintiff,**                        )<br>                                                            )<br>**v.**                                                 )<br>                                                            )<br>CAROLYN W. COLVIN,                   )<br>**Acting Commissioner of Social Security,**   )<br>                                                            )<br>              **Defendant.**                     ) | CIVIL ACTION NO. 3:14-17091 |

**M E M O R A N D U M   O P I N I O N**

      This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 7 and 8.)

      The Plaintiff, Matthew Cornelius Medley (hereinafter referred to as "Claimant"), filed an application for SSI on March 4, 2011 (protective filing date), alleging disability as of January 1, 2010, due to antisocial personality disorder, borderline personality disorder, post traumatic stress disorder ("PTSD"), behavior disability, attention deficit hyperactive disorder ("ADHD"), and bipolar I mixed with psychotic features. (Tr. at 13, 128-33, 145, 149.) The claim was denied initially and upon reconsideration. (Tr. at 65-66, 67-69, 73-75.) On November 7, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76-77.) The hearing was held on October 19. 2012, before the Honorable LaRonna Harris. (Tr. at 28-64.) By decision dated November 13, 2012, the ALJ determined that Claimant was entitled to benefits. (Tr. at 13-23.) The ALJ's decision became the final decision of the Commissioner on March 24, 2014, when the Appeals Council denied Claimant's

request for review. (Tr. at 1-6.) On May 28, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant,

considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area

> (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since March 4, 2011, the application date. (Tr. at 15, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "bipolar syndrome, post-traumatic stress disorder, opioid dependence, attention deficit-hyperactivity disorder, and depression," which were severe impairments. (Tr. at 15, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Claimant] is limited to work that does not require more than brief and superficial contact with the general public. He is limited in ability to work where he would have frequent contact and interaction with coworkers or would involve frequent instruction from a supervisor.

(Tr. at 17, Finding No. 4.) At step four, the ALJ found that Claimant was capable of performing his past relevant work as a dishwasher, food preparation worker, clothing sorter, and painter. (Tr. at 21, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform other jobs such as a commercial cleaner and freight handler at the heavy level of exertion, a hospital cleaner and laundry worker at the medium level of exertion, an office cleaner and a hand packager at the light level of exertion, and an inspector

and assembler at the sedentary level of exertion. (Tr. at 22, Finding No. 5.) On these bases, benefits were denied. (Tr. at 23, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 15, 1975, and was 37 years old at the time of the administrative hearing, October 19, 2012. (Tr. at 21, 128.) Claimant had at least a high school education, and was able to communicate in English. (Tr. at 21, 36, 148, 150.). Claimant had past relevant work as a dishwasher, food preparation worker, clothing sorter, painter, construction worker, setup worker for a hotel, and landscaper. (Tr. at 21, 55, 150, 168-75.)

The Medical Record.

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of his treating psychiatrist, Dr. Enid A. Kurtz, M.D. (Document No. 12 at 4-8.) Claimant asserts that Dr. Kurtz assessed numerous marked limitations and three extreme limitations, which were disregarded by the ALJ, contrary to SSR 96-2p. (Id. at 5-6.) Claimant further asserts that the ALJ failed to provide good reasons for the weight assigned Dr. Kurtz's opinion, contrary to 20 C.F.R. § 416.927(d)(2). (Id. at 6.) Pursuant to the Fifth Circuit's holding in Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000), Claimant contends that the ALJ should have accorded Dr. Kurtz's opinion great weight because she was familiar with his impairments, treatment, and response to treatment. (Id. at 7-8.)

In response, the Commissioner asserts that the ALJ's decision to give Dr. Kurtz's opinion some weight, but not controlling weight, is supported by the substantial evidence of record. (Document No., 13 at 18-20.) The Commissioner asserts that pursuant to Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996), the ALJ was not required to give Dr. Kurtz's opinion controlling weight if the substantial evidence failed to support the opinion. (Id. at 18.) The Commissioner asserts that although Claimant had a long history with anger management and impulse control, he was learning through therapy and with the aid of medication to gain insight into his own behaviors. (Id. at 19.) Claimant advised Dr. Kurtz in March 2011, that he was feeling better and was under better control and Dr. Kurtz noted that Claimant was acquiring coping skills to use in stressful situations. (Id.) The Commissioner further notes that Claimant's mental status exam findings essentially were benign. (Id.) The Commissioner

notes that the ALJ also was persuaded by Claimant's continued ability to work after his alleged onset date. (Id. at 19-20.) Claimant, therefore, had no problems maintaining his job with the landscaping company, and there was a lack of evidence of difficulty relating to supervisors, coworkers, or the public. (Id. at 20.) Accordingly, the Commissioner contends that the ALJ's decision to not give controlling weight to Dr. Kurtz's opinion is supported by the substantial evidence of record. (Id.)

Analysis.

Treating Opinion.

Claimant alleges that the ALJ erred in failing to controlling weight to Dr. Kurtz's opinion. (Document No. 12 at 4-8.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2012). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of

8

an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2012). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors

listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

On October 3, 2012, Dr. Kurtz completed a form Mental Status Assessment of Ability to Do Work-Related Activities (Mental). (Tr. at 755-58.) Dr. Kurtz opined that Claimant's prognosis was guarded and depended on his continued compliance with medical recommendations and continued prescribed medications. (Tr. at 755.) Dr. Kurtz opined that Claimant was limited moderately in his ability to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions, with pervasive loss in almost all activities, appetite disturbance with weight change, poverty of content of speech, apprehensive expectation, paranoid thinking or inappropriate suspiciousness, recurrent obsessions or compulsions, illogical thinking, memory impairment, and recurrent and severe panic attacks. (Tr. at 756-57.) Dr. Kurtz assessed marked limitations in ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations and to change in a routine work setting, with decreased energy, thoughts of suicide, flat or inappropriate affect, feelings of guilt or worthlessness, impairment in impulse control, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, psychomotor agitation or retardation, psychological dependence, persistent disturbances of mood or affect, emotional withdrawal or isolation, bipolar syndrome with a history of manic and depressive syndromes, intense and unstable interpersonal relationships, emotional instability, manic syndrome, deeply ingrained patterns of behavior, and decreased need for sleep. (Id.) Finally, Dr. Kurtz assessed extreme hyperactivity, motor tension, and easily distracted. (Tr. at 757.) Dr. Kurtz noted that Claimant was very suspicious of strangers and was unable to maintain a natural relationship with people in positions of authority. (Tr. at 758.)

In his decision, the ALJ gave the opinion of Dr. Kurtz some weight because the opinion was not consistent fully with the medical evidence of record as a whole. (Tr. at 20-21.) The ALJ noted that Claimant had a long history of problems with impulse control and anger management, but that treatment records from Prestera Center demonstrated that he sought treatment and showed improvement of his symptoms. (Tr. at 20.) The ALJ noted that Claimant reported that he had been proud of himself for walking away from situations. (Tr. at 20-21.) Furthermore, the ALJ noted that Claimant was able to maintain a job as a landscaper from June 2011, through at least September 2012. (Tr. at 21.) Finally, the ALJ noted that Claimant was capable of performing activities of daily living with little or no difficulty. (Id.)

Treatment records from Prestera Center support the ALJ's findings that Claimant's behavioral issues improved with therapy and medication treatment, that he maintained employment as a landscaper, and that he applied what he learned in therapy to his employment situations. On February 22, 2011, Claimant reported to Dr. Kurtz that he believed the medications were helping tremendously and that he was not as impulsive or easily irritated. (Tr. at 344.) On April 11, 2011, Dr. Kurtz assessed a GAF of 55, which was indicative of only moderate symptoms. (Tr. at 253.) Mental status examinations essentially were normal. (Tr. at 251-53, 256-57, 261-63.)On April 21, 2011, Holly McKenna, M.A., noted Claimant's reports that he had been able to handle himself better around others since having learned skilled and techniques for controlling his temper. (Tr. at 246, 487.) On June 16, 2011, Ms. McKenna noted that Claimant started working at a landscape company as it provided more income to support his nine children. (Tr. at 247, 489.) Claimant reported to Denise R. Smith, a licensed psychologist, on July 11, 2011, that the therapy and medications had helped him achieve the ability to think more clearly and that his thoughts did not race. (Tr. at 248, 491.) He reported improvement in his relationships as well. (Id.) On August 3, 2011, Dr. Kurtz assessed a GAF of 65, which indicated

only mild symptoms. (Tr. at 263.) Ms. Smith noted on September 26, 2011, that Claimant was gaining insight into his behavior and ways that it affected others. (Tr. at 501.) Claimant reported on October 19, 2011, that he had handled a situation with his employer well and that he was recognizing psychological aspects of anger. (Tr. at 503.) Ms. Smith again noted on November 23, 2011, that Claimant had gained insight into some of his symptoms and was eager to learn more ways to cope positively. (Tr. at 505.) On April 25, 2012, Ms. Smith noted that Claimant had gained insight regarding his previous childhood trauma and post-traumatic stress. (Tr. at 515.) Ms. Smith noted on August 9, 2012, that Claimant had gained insight into his previous behaviors and was able to cope with his current struggles without being violent or aggressive. (Tr. at 709.)

Claimant testified that he was capable of performing self-care, watched television, used the computer, occasionally walked to the gas station, used the microwave and prepared simple foods, used public transportation, picked up after himself, listened to music. (Tr. at 18-19, 44-48.) These activities support the ALJ's finding that Dr. Kurtz's opinion was not entitled to controlling weight. Although Dr. Kurtz assessed marked limitations in dealing with supervisors, coworkers, and the public, the State agency consultants assessed only moderate limitations. (Tr. at 19, 218-35, 357-74.) The ALJ, therefore, assessed no frequent interaction with supervisors or coworkers and only brief interaction with the public. (Tr. at 17.)

Accordingly, in view of the medical evidence of record, including Claimant's response to therapy and medication treatment, his continued employment as a landscaper, and his reported activities of daily living, the undersigned finds that the ALJ's decision to accord only some weight to the stringent limitations assessed by Dr. Kurtz is supported by the substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the

Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.        The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge